737 So.2d 509 (1999)
Louis B. GASKIN, Appellant,
v.
STATE of Florida, Appellee.
No. 90,119.
Supreme Court of Florida.
July 1, 1999.
Rehearing Denied August 30, 1999.
*511 Terri L. Backhus, Chief Assistant CCR, Amy Settlemire, Assistant CCR, and Linda McDermott, Staff Attorney, Office of the Capital Collateral Representative, Tampa, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Sara D. Baggett, Assistant Attorney General, West Palm Beach, Florida, for Appellee.
PER CURIAM.
Louis Gaskin appeals the summary denial of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the following reasons, we affirm the trial court's order as to most issues, but remand this case to the trial court to hold an evidentiary hearing on Gaskin's ineffective assistance of counsel claims as discussed herein.

MATERIAL FACTS
The facts of this case are set forth in Gaskin v. State, 591 So.2d 917 (Fla.1991). In 1991, Gaskin was convicted of four counts of first-degree murder (two counts of premeditated and two counts of felony murder) involving two victims, one count of attempted first-degree murder, two counts of armed robbery and two counts of burglary. As for the murder convictions, the jury recommended a sentence of death by a vote of eight to four. The trial court followed the jury's recommendation, finding four aggravating circumstances[1] and two mitigating circumstances.[2] This Court *512 affirmed Gaskin's convictions and sentence but vacated two of the adjudications for first-degree murder, one for each victim, leaving in place two convictions for first-degree murder. See Gaskin v. State, 591 So.2d 917 (Fla.1991).
Gaskin petitioned the United States Supreme Court for writ of certiorari on the grounds the jury instruction for the heinous, atrocious, or cruel aggravator was unconstitutionally vague. The Supreme Court granted certiorari, vacated the judgment, and remanded the case to this Court for further consideration in light of Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992) (holding that it is reversible error for the judge or jury to weigh an invalid aggravating circumstance). On remand, this Court found that Gaskin had failed to preserve the vagueness challenge for appellate review, and even if it had been preserved, any error in giving the instruction was harmless beyond a reasonable doubt. See Gaskin v. State, 615 So.2d 679, 680 (Fla.1993).
On March 23, 1995, Gaskin filed an initial motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. He subsequently amended that motion on October 12, 1995, still within the statutory time limit.[3] After a Huff[4] hearing, the trial court summarily denied the motion without holding an evidentiary hearing. This appeal followed.

APPEAL
Gaskin raises twenty-one issues on appeal,[5] many of which may be disposed of *513 summarily because they are procedurally barred,[6] facially without merit,[7] not cognizable in 3.850 postconviction proceedings,[8] or moot in light of our decision today.[9] Gaskin's' remaining claims, however, warrant discussion, and we will address them in turn.

INEFFECTIVE ASSISTANCE OF COUNSEL
In his postconviction motion Gaskin raised several claims of ineffective assistance of counsel.[10] He asserted that counsel rendered ineffective assistance *514 during the penalty phase by failing to present important mitigating evidence by failing to provide Dr. Harry Krop, the mental health expert, with sufficient background information to properly assess Gaskin's mental condition, by failing to specifically address aggravating and mitigating factors in his closing argument to the jury, and by failing to request a limiting instruction on the doubling of aggravating circumstances. Gaskin contends the trial court should have held an evidentiary hearing on these claims. We agree.
In this case, we find that Gaskin met his burden in establishing a factual basis for an evidentiary hearing on his ineffective assistance of counsel claim based on counsel's alleged failure to investigate and present important mitigating evidence and to properly advocate in Gaskin's behalf.[11] During the penalty phase of the trial, counsel presented limited evidence in mitigation. Indeed, the only evidence for the defense during the penalty phase of the trial consisted of brief testimony from two witnesses: Gaskin's cousin and his aunt. The total sum of their testimony was that Gaskin was well-liked by everyone growing up, he worked hard at a lumber mill where he was employed and seemed to enjoy his job, and there was nothing about Gaskin's past or background that would have caused him to act violently or commit murder.
In contrast to the limited mitigating evidence actually presented by trial counsel, Gaskin has presented an extensive litany of important facts in his motion for postconviction relief which paint an entirely different picture of Gaskin's family background and mental condition than the meager picture presented at trial. These facts include: (1) that his mother was an unwed teenager; (2) that he was raised by his elderly great-grandparents who abused Gaskin and forced him to eat off the floor; (3) that at the age of thirteen, Gaskin would hide under the bed and had to be physically pulled out, one time during which he was foaming at the mouth; (4) that Gaskin was exposed to incestuous sexual activity at a young age; (5) that as a teenager, Gaskin was arrested for stealing a bicycle and exhibited suicidal tendencies by playing with dangerous snakes and playing Russian Roulette with a loaded revolver; (6) that he failed the third and sixth grades and dropped out of school after the eighth grade; (7) that Gaskin suffers from longstanding, severe mental health disorders including organic brain damage, schizotypal personality disorder and schizophrenia. Gaskin contends that because of these mental illnesses, he experiences auditory hallucinations and episodes of derealization and depersonalization, and was unable to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law at the time of the murders. According to *515 Gaskin's petition, this important evidence was available at the time of Gaskin's trial yet none of it was presented to the jury.[12]
Gaskin also contends that counsel failed to provide Dr. Krop with requested background information and counsel completely failed to address mitigating and aggravating circumstances during his closing argument. The record reflects that Dr. Krop stated in deposition that he could not even make a diagnosis because he did not possess sufficient information on Gaskin at that time. Specifically, Dr. Krop indicated that he had requested, but never received, background information such as school records, medical records, and deposition testimony.
As to defense counsel's ineffectiveness in closing argument, it is alleged that counsel limited his brief appeal to the jury that Gaskin's life should be spared because the times have changed for the worse since World War II, that legal killing results in the "dehumanization of humanity," and that the jury should strive for a more peaceful society by recommending life. Absolutely no mention was made concerning the aggravating or mitigating circumstances upon which the trial court instructed the jury that it must rely in making a penalty phase recommendation to the court. This limited advocacy on behalf of Gaskin before the jury further supports appellant's claim and the need for an evidentiary hearing.[13]See Wilson v. *516 Wainwright, 474 So.2d 1162 (Fla.1985).
Under rule 3.850, a postconviction defendant is entitled to an evidentiary hearing unless the motion and record conclusively show that the defendant is entitled to no relief. See Fla. R. Crim P. 3.850(d); Rivera v. State, 717 So.2d 477 (Fla.1998); Valle, 705 So.2d at 1333; Roberts v. State, 568 So.2d 1255, 1256 (Fla. 1990). The movant is entitled to an evidentiary hearing on a claim of ineffective assistance of counsel if he alleges specific "facts which are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the defendant." Id. at 1259.[14]See Mendyk v. State, 592 So.2d 1076, 1079 (Fla. 1992); Kennedy v. State, 547 So.2d 912, 913 (Fla.1989). Upon review of a trial court's summary denial of postconviction relief without an evidentiary hearing, we must accept all allegations in the motion as true to the extent they are not conclusively rebutted by the record. Valle, 705 So.2d at 1333.
While the postconviction defendant has the burden of pleading a sufficient factual basis for relief, an evidentiary hearing is presumed necessary absent a conclusive demonstration that the defendant is entitled to no relief. In essence, the burden is upon the State to demonstrate that the motion is legally flawed or that the record conclusively demonstrates no entitlement to relief. The rule was never intended to become a hindrance to obtaining a hearing or to permit the trial court to resolve disputed issues in a summary fashion. To the contrary, the "rule was promulgated to establish an effective procedure in the courts best equipped to adjudicate the rights of those originally tried in those courts." Roy v. Wainwright, 151 So.2d 825, 828 (Fla.1963).[15] Its purpose was to provide a simplified but "complete and efficacious postconviction remedy to correct convictions on any grounds which subject them to collateral attack." Id.[16] It is especially important that initial motions in capital cases predicated upon a claim of ineffective assistance of counsel be carefully reviewed to determine the need for a hearing.[17]Cf. Rivera, *517 717 So.2d at 487 (reversing for evidentiary hearing on claim of ineffective assistance of counsel where defendant alleged extensive evidence of mitigation in 3.850 motion compared to limited mitigation actually presented at trial); Ragsdale v. State, 720 So.2d 203 (Fla.1998) (same holding).

CONFLICT OF INTEREST
We also conclude that the summary denial of Gaskin's claim for ineffective assistance of counsel based on an alleged conflict of interest arising from trial counsel's status as a deputy sheriff was error. Indeed, we have consistently remanded cases involving similar circumstances for an evidentiary hearing to consider the extent of trial counsel's duties as a deputy sheriff and whether counsel's status as a deputy sheriff interfered with his or her "ability to provide effective legal assistance" to the defendant. Harich v. State, 542 So.2d 980, 981 (Fla.1989); see also Teffeteller v. Dugger, 676 So.2d 369, 371 (Fla.1996) (mandating hearings on claims concerning defense attorney Howard Pearl's alleged conflict of interest based on his status as deputy sheriff); Quince v. State, 592 So.2d 669, 670 (Fla. 1992); Wright v. State, 581 So.2d 882, 886 (Fla.1991); Herring v. State, 580 So.2d 135, 138-39 (Fla.1991). Accordingly, on remand Gaskin shall also have the opportunity to present this claim to the trial court during the evidentiary hearing.

AMENDED 3.850 MOTION
Gaskin contends the trial court erred in denying his amended 3.850 motion on the ground that the new claims in the amendment were procedurally barred as if the amendment were a successive motion.[18] While we agree, we find the error harmless.
Rule 3.850 permits trial courts to dismiss "[a] second or successive motion ... if new and different grounds are alleged, [and] the judge finds that the failure of the movant or the attorney to assert those grounds in a prior motion constituted an abuse of the procedure governed by these rules." Fla. R.Crim. P. 3.850(f). The 1993 version of rule 3.850 further stated that except for limited reasons "[n]o ... motion shall be filed or considered pursuant to this rule if filed more than 2 years after the judgment and sentence become final." See Fla. R.Crim. P. 3.850(b) (1992). However, the rule does not address amendments to a timely filed motion pursuant to the rule.
Here, the record indicates that Gaskin filed an initial rule 3.850 motion in March 1995, almost eight months prior to the two-year statutory period within which to file such motions. Before the trial court ruled on the original motion and before the termination *518 of the statutory time limit, Gaskin filed an amended motion asserting five new allegations. Thus, both the original and amended 3.850 motions were filed within the statutory two-year time limitation. Under these circumstances, it was error for the trial court not to consider the merits of the new allegations. However, we find this error harmless in light of the fact the trial court correctly found that several of the new allegations were procedurally barred for reasons other than the failure to raise them in the original motion.[19]

PUBLIC RECORDS REQUEST
Gaskin contends the trial court erred in not ordering the state to provide the prosecutor's notes for which the State had not claimed an exemption under chapter 119, Florida Statutes (1995). At the Huff hearing held on April 29, 1996, the State acknowledged that certain documents had been withheld but claimed that these documents consisted of notes by the prosecutor in preparation for trial (i.e., a list of questions for witnesses at trial). Collateral counsel, however, did not request the notes at that time or object to their initial withdrawal from the State's file. Instead, collateral counsel filed a motion on June 18, 1995, almost a month and a half later, seeking an in-camera inspection of the prosecutor's notes and a hearing on whether the subject documents were public records. The trial court denied Gaskin's motion on the basis that Gaskin had waived any entitlement to the notes by not objecting to the State's withholding of the notes and by not requesting the notes at the time of the hearing.
In Lopez v. Singletary, 634 So.2d 1054 (Fla.1993), we held "that any postconviction movant dissatisfied with the response to any requested access must pursue the issue before the trial judge or that issue will be waived." Id. at 1058. Recently, in Johnston v. State, 708 So.2d 590 (Fla. 1998), we held that the trial court did not err in denying the defendant's motion for an evidentiary hearing on his public records request because "at the Huff hearing Johnston's postconviction counsel volunteered that while not waiving his right to make the public records requests, he was not going to pursue them at that time." Id. at 592-93 (footnote omitted).
Even if the issue was not waived, however, Gaskin would not be entitled to the requested notes under chapter 119. Under our holdings in Valle, 705 So.2d at 1335, Lopez v. State, 696 So.2d 725, 728 (Fla.1997), and State v. Kokal, 562 So.2d 324 (Fla.1990), the notes do not constitute public records within the meaning of chapter 119 and, therefore, are not subject to disclosure. Thus, the trial court did not err in denying Gaskin's request for such documents.

CONCLUSION
In sum, we affirm in part and reverse in part the trial court's summary order on Gaskin's original and amended 3.850 motion and remand this case with instructions for the trial court to conduct an evidentiary hearing as outlined above.
It is so ordered.
SHAW and ANSTEAD, JJ., and KOGAN, Senior Justice, concur.
PARIENTE, J., concurs specially with an opinion, in which SHAW and ANSTEAD, JJ., concur.
*519 WELLS, J., dissents with an opinion, in which HARDING, C.J. and OVERTON, Senior Justice, concur.
PARIENTE, J., specially concurring.
I concur in the majority's analysis and conclusion. I write separately to reiterate my agreement with Justice Wells' suggestion in his concurring opinion in Mordenti v. State, 711 So.2d 30, 33 (Fla.1998), that rule 3.851 be amended to require an evidentiary hearing on "initial [3.850] motions which assert ineffective assistance of counsel, Brady, or other newly discovered evidence claims, or other legally cognizable claims which allege an ultimate factual basis." Because such claims so frequently require an evidentiary hearing for resolution, I agree with Justice Wells that the better practice would be to require trial courts to hold evidentiary hearings on the initial 3.850 motion in death penalty cases, in order to help prevent the delay exemplified here.
As rule 3.850 and the decisions of this Court make clear, a defendant is entitled to an evidentiary hearing unless the record conclusively shows that the defendant is not entitled to relief. Fla. R.Crim. P. 3.850(d); see, e.g., Valle v. State, 705 So.2d 1331, 1333 (Fla.1997); Roberts v. State, 678 So.2d 1232, 1235 (Fla.1996). However, during my time on the Court I have observed that we have often remanded for an evidentiary hearing on a 3.850 motion because the record does not conclusively rebut the defendant's claims. The failure to conduct an evidentiary hearing under these circumstances causes delay and undermines our goal of providing a simplified, complete and efficacious remedy for postconviction claims. See Majority op. at 10-11 (quoting Roy v. Wainwright, 151 So.2d 825, 828 (Fla.1963)).
For example, in this case the defendant filed his motion for postconviction relief over three years ago. We have now reviewed the record and determined that a remand for an evidentiary hearing is required. Naturally, there will be some additional delay before a hearing is conducted and an order is ultimately issued. An appeal will likely follow the evidentiary hearing. Thus, the case will be further delayed, perhaps by another three or more years, because an evidentiary hearing was not conducted initially, as it should have been.
This defendant has been under a sentence of death since 1991, and has yet to have the merits of his claims of ineffective assistance of trial counsel reviewed, even though the allegations are not conclusively rebutted by the record. Other defendants have experienced even lengthier delays. In my opinion, the interests of justice, and timeliness, would be better served by a requirement that trial courts conduct evidentiary hearings on all initial 3.850 claims brought in death penalty cases. If the claims raised by defendants are without merit, the evidentiary hearing on the issues should not be unduly lengthy. In addition, if the trial court conducts a hearing on the facts alleged when initially raised, then those issues will be expeditiously reviewed by the trial court, which is in a superior position to review and address these claims, saving time and judicial resources in the long run.
An amendment to rule 3.851 mandating an evidentiary hearing has not yet been adopted by this Court because the Chief Justice has appointed a committee of trial judges to review the entire post-conviction procedure in death penalty cases and make recommendations to this Court. It is my hope that once we receive those recommendations, this Court will be able to take positive steps to reduce delay and enhance decision-making in the post-conviction arena in death penalty cases.
SHAW and ANSTEAD, JJ., concur.
WELLS, J., dissenting.
I dissent because the trial judge considered the allegations in Gaskin's postconviction motion and set forth sufficient reasons to deny the motion in a thoroughly detailed *520 order. Moreover, whether Gaskin is entitled to relief on his claim of ineffective assistance of counsel is governed by the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). I do not understand the majority's reference to Wilson v. Wainwright, 474 So.2d 1162 (Fla.1985), at page nine and footnote eleven of its opinion, to alter this rule of law.
I also point out that the rule change I advocated in Mordenti v. State, 711 So.2d 30, 33 (Fla.1998) (Wells, J., concurring), which is referred to in footnote seventeen of the majority opinion as well as in Justice Pariente's concurring opinion, has not been adopted. The majority, in footnote seventeen of its opinion, significantly changes the concept of these postconviction proceedings without amending the rule. I fear this will serve to confuse the procedure for the present processing and review of these cases. The Chief Justice has appointed a committee of trial judges to review the procedure and such changes must wait for their input.
HARDING, C.J. and OVERTON, Senior Justice, concur.
NOTES
[1] The aggravating factors included: (1) both murders were committed in a cold, calculated, and premeditated manner; (2) Gaskin had previously been convicted of another capital offense or of a felony involving the use or threat of violence; (3) the murders were committed while the defendant was engaged in the commission of a robbery or burglary; and (4) the murder of Georgette Sturmfels was especially heinous, atrocious, or cruel. See Gaskin, 591 So.2d at 919.
[2] The mitigators for both murders included: (1) the murder were committed while Gaskin was under extreme mental or emotional disturbance and (2) Gaskin suffered a deprived childhood. Id.
[3] After we affirmed Gaskin's sentence upon remand, see Gaskin v. State, 615 So.2d 679 (Fla.1993), he filed a petition for certiorari in the United States Supreme Court. That petition was denied on October 12, 1993. See Gaskin v. Florida, 510 U.S. 925, 114 S.Ct. 328, 126 L.Ed.2d 274 (1993). Where a petition for certiorari has been filed in the United States Supreme Court, the time period for filing motions for postconviction relief does not begin to run until the petition for certiorari has been determined. See Huff v. State, 569 So.2d 1247, 1250 (Fla.1990) ("If a writ of certiorari is filed with the United States Supreme Court, the two-year time period does not begin to run until the writ is finally determined."). The 1993 version of rule 3.850 provided capital defendants two years in which to file a motion for postconviction relief. See Fla. R.Crim. P. 3.850(b)(1992). Therefore, because Gaskin's sentence did not become final until October 12, 1993, he had until October 12, 1995, to file a motion for postconviction relief.
[4] Huff v. State, 622 So.2d 982 (Fla.1993).
[5] These issues include: (1) the trial court erred in summarily denying Gaskin's amended 3.850 motion for postconviction relief on grounds that the claims were procedurally barred as successive; (2) the trial court erred in denying Gaskin's motion on the ground he failed to allege names and availability of witnesses; (3) the trial court erred in not ordering the state to provide the prosecutor's notes for which no exemption had been claimed under chapter 119; (4) the trial court abused its discretion in not granting an evidentiary hearing on Gaskin's ineffective assistance of trial counsel claim for failure to present mental health mitigation and for failure to challenge the state's case; (5) the trial court erred in summarily denying Gaskin's claim for ineffective assistance of pretrial and guilt phase counsel on the grounds that it was procedurally barred as successive; (6) the jury was improperly instructed on the cold, calculated, and premeditated aggravating factor; (7) the trial court and state minimized the jury's role during sentencing in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); (8) the trial judge and jury improperly considered nonstatutory aggravating factors; (9) the trial court's denial of Gaskin's change of venue request denied him a fair and impartial jury; (10) Florida's capital sentencing statute is unconstitutional on its face and as applied; (11) appellate counsel rendered ineffective assistance on appeal for failure to provide a complete record on appeal; (12) the prior violent felony, felony murder, pecuniary gain, CCP, and HAC aggravating factors are vague and overbroad; (13) Gaskin was denied a fair and impartial trial due to juror misconduct; (14) Florida Bar Rule of Professional Conduct 4-3.5(d)(4), which forbids attorneys from communicating with jurors, denied Gaskin a fair and impartial trial; (15) Gaskin was denied a fair trial based on a discriminatory jury selection process; (16) Gaskin was denied an adequate mental health evaluation as required in Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); (17) the trial court erred in admitting irrelevant evidence during the guilt phase of the trial; (18) Gaskin was denied a fundamentally fair trial due to the cumulative effect of the errors; (19) the felony murder aggravator is an automatic aggravator; (20) prosecutorial misconduct during the penalty phase of the trial denied Gaskin a fair and impartial trial; and (21) the trial court shifted the burden of proof to the defendant during the penalty phase of the trial in violation of Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).
[6] We find issues (7), (9), (10), (11), (12), (17), (19), and (21) to be procedurally barred because these issues were raised on direct appeal. See Gaskin, 591 So.2d at 919-20. Further, we find issues (6), (8), (13), (14), (15), and (20) to be procedurally barred because they could have been raised on direct appeal. See Harvey v. Dugger, 656 So.2d 1253 (Fla. 1995) (holding that "issues that either could have been, but were not, raised on direct appeal are not cognizable through collateral attack").
[7] Interjected within issues (6), (7), (10), (12), (15), (20), and (21) are claims based on ineffective assistance of counsel for failure to raise an appropriate objection or otherwise preserve the issue for appellate review. However, we find these claims legally and facially insufficient to warrant relief under the requirements of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Gaskin has not alleged how the outcome of his trial would have been different had counsel properly objected to the asserted error. In addition, the claims concerning the various jury instructions are without merit as a matter of law. See Hudson v. State, 708 So.2d 256, 261 (Fla.1998) (rejecting claim that prior violent felony aggravator is unconstitutionally vague); Hunter v. State, 660 So.2d 244, 252-53 (Fla.1995) (rejecting similar Caldwell, cold, calculated and premeditated, and felony murder claims); Patten v. State, 598 So.2d 60 (Fla.1992) (rejecting claim that death penalty statute is unconstitutional); Kelley v. Dugger, 597 So.2d 262 (Fla. 1992) (rejecting claim that pecuniary gain aggravator is unconstitutionally vague). Thus, counsel could not be deemed deficient in failing to object to the various jury instructions. See Mendyk v. State, 592 So.2d 1076, 1080 (Fla.1992) ("When jury instructions are proper, the failure to object does not constitute a serious and substantial deficiency that is measurably below the standard of competent counsel."), receded from on other grounds, Hoffman v. State, 613 So.2d 405 (Fla.1992).
[8] In issue (11), Gaskin attempts to raise a claim for ineffective assistance of appellate counsel. Such claims should be raised in a habeas corpus petition and, therefore, are not cognizable in a rule 3.850 postconviction proceeding. See Knight v. State, 394 So.2d 997 (Fla.1981) (holding claims for ineffective assistance of appellate counsel should be raised by petition for habeas corpus in the appellate court).
[9] In issue (18), Gaskin asserts he was denied a fundamentally fair trial due to the cumulative effect of the errors. This claim has been rendered moot in light of our decision to remand this case for an evidentiary hearing.
[10] Gaskin contends the trial court erred in denying these claims on the ground they were insufficiently pleaded. Specifically, the trial court denied Gaskin's claims of ineffective assistance of guilt and penalty phase counsel, in part because he failed to name the witnesses he intended to call and state whether they were available to testify. Contrary to the trial court's finding, however, there is no requirement under rule 3.850 that a movant must allege the names and identities of witnesses in addition to the nature of their testimony in a postconviction motion. Rather, rule 3.850 merely requires the motion to state the judgment or sentence under attack, whether there was an appeal from the judgment and the disposition thereof, whether a previous postconviction motion was filed and, if so, the reason the claims in the present motion were not filed in the former motion, the nature of the relief sought, and a brief statement of the facts relied upon in support of the motion. See Fla. R.Crim. P. 3.850(c).

In Valle v. State, 705 So.2d 1331 (Fla.1997), we held it was error for the trial court to summarily deny Valle's 3.850 motion on the basis that no supporting affidavits had been submitted:
Rule 3.850(c), which sets forth the contents of a 3.850 motion, requires a movant to include a brief statement of the facts (and other conditions) relied on in support of the motion. Fla. R.Crim. P. 3.850(c)(6). However, nothing in the rule requires the movant to attach an affidavit or authorizes a trial court to deny the motion on the basis of a movant's failure to do so.
Id. at 1334. Likewise, nothing in the rule states that a movant must allege the identities of the witnesses, the nature of their testimony, or their availability to testify. It is during the evidentiary hearing that Gaskin must come forward with witnesses to substantiate the allegations raised in the postconviction motion. Therefore, we hold that it was error for the trial court to require Gaskin to plead the identities of witnesses in order to be entitled to a hearing.
[11] See Wilson v. Wainwright, 474 So.2d 1162, 1164 (Fla.1985), wherein Justice Ehrlich, writing for the Court, declared:

The propriety of the death penalty is in every case an issue requiring the closest scrutiny.... However, the basic requirement of due process in our adversarial legal system is that a defendant be represented in court, at every level, by an advocate who represents his client zealously within the bounds of the law. Every attorney in Florida has taken an oath to do so and we will not lightly forgive a breach of this professional duty in any case; in a case involving the death penalty it is the very foundation of justice.
[12] In response, the State points to a record exchange between Gaskin and his trial attorney at trial that the State contends "conclusively demonstrates" that counsel had a valid tactical choice for not presenting the extensive evidence of mental mitigation. We find this argument unpersuasive.

Apparently, counsel recorded a conversation with his client to justify a decision not to call Dr. Rotstein as a witness. This colloquy refers only to the question of whether Dr. Rotstein should testify. However, it obviously does not explain any tactical reasons for not calling Dr. Krop as a witness other than the fact the doctor would not provide any opinions as to mitigating circumstances. As Gaskin contends, however, Dr. Krop's inability or unwillingness to present mitigating evidence allegedly was due to trial counsel's failure to investigate the extensive mitigation available and the attendant failure to provide Dr. Krop with the necessary information with which to evaluate the existence of mental mitigation.
The exchange also fails to deal with the presentation of other mitigating evidence. If anything, this exchange supports a conclusion that an evidentiary hearing should have been held because, at a minimum, the exchange indicates a factual dispute between the claim of a trial strategy, on the one hand, and one of lack of investigation and presentation of mitigating evidence by counsel on the other.
[13] Gaskin also contends he was denied a competent mental health evaluation in violation of Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), because counsel failed to provide background information to Dr. Krop, and, as a result, Dr. Krop could not offer a diagnosis or opinion as to Gaskin's mental condition. We reject this claim but note that appellant will have a full opportunity to address this issue under his claim that counsel was ineffective in investigating and presenting mitigating evidence.

In Gaskin's remaining ineffectiveness claim, he argues guilt-phase counsel failed to adequately challenge the state's case and, therefore, rendered ineffective assistance of counsel. However, at the outset this claim does not appear to warrant an evidentiary hearing because Gaskin has not alleged prejudice as required under Strickland. Although he alleges deficient performance due to counsel's failure to challenge the state's case by not properly cross-examining the state's expert witnesses and failure to impress upon the jury that several persons had access to and possibly contaminated the crime scene, Gaskin does not allege how this deficient conduct prejudiced the outcome of his trial.
Gaskin also argues counsel was ineffective for failing to properly request a limiting instruction on doubling of the aggravators of murder committed during the commission of a felony and murder committed for pecuniary gain. We also find this claim legally insufficient because Gaskin has not shown how the outcome of his trial would have been different had counsel requested a limiting instruction. Further, unlike the ineffective assistance claims addressed above, we find this claim to be meritless as a matter of law. In Monlyn v. State, 705 So.2d 1, 6 (Fla.1997), we held that "when the only underlying felony of a murder is robbery, the aggravators of murder committed for pecuniary gain and murder committed during the course of an enumerated felony cannot be doubled and must be treated as one." In this case, we note that Gaskin was convicted of two counts of armed robbery and two counts of burglary. Thus, no improper doubling occurred and counsel was not deficient for failing to request a limiting instruction. Moreover, any error in considering both factors would have been harmless because the trial judge merged the pecuniary gain aggravator with the murder committed during the course of a felony aggravator. See Jones v. State, 612 So.2d 1370, 1375 (Fla. 1992).
[14] For counsel's acts or omissions to be considered deficient they must fall outside the wide range of professionally competent assistance. See Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052; Robinson v. State, 707 So.2d 688, 695 (Fla.1998); Rose v. State, 675 So.2d 567, 569 (Fla.1996). Prejudice, in the context of penalty phase errors, is shown where, absent the errors, there is a reasonable probability that the balance of aggravating and mitigating circumstances would have been different or the deficiencies substantially impair confidence in the outcome of the proceedings. Strickland, 466 U.S. at 695, 104 S.Ct. 2052; Robinson, 707 So.2d at 695. The concern is that "the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
[15] In Roy we construed Criminal Procedure Rule No. 1 which later was renumbered as rule 3.850 of the Florida Rules of Criminal Procedure.
[16] This Court has appointed a special committee of trial judges to consider the issue of whether an evidentiary hearing should always be required on an initial postconviction claim and other issues involving the procedure for postconviction relief in capital cases.
[17] The instant case involves an initial motion for postconviction relief. Justice Wells, in a specially concurring opinion, recently recognized our concerns in postconviction proceedings and suggested amending the rule to require courts to hold evidentiary hearings on initial postconviction motions in capital cases:

I write to advocate an amended rule 3.851. I believe the rule should be amended to require that an evidentiary hearing is mandated on initial motions which assert ineffective assistance of counsel, Brady, or other newly discovered evidence claims, or other legally cognizable claims which allege an ultimate factual basis. Too much judicial and counsel time and resources have been wasted in determining whether to hold an evidentiary hearing. This has added to the inordinate amount of time prisoners remain on death row.
Mordenti v. State, 711 So.2d 30, 33 (Fla. 1998) (Wells, J., concurring). We agree with that portion of Justice Wells' concurring opinion calling for a presumption in favor of evidentiary hearings in initial 3.850 motions asserting claims for ineffective assistance of counsel, Brady, and other newly discovered evidence claims in capital cases and more stringent review of subsequent motions. Based on the important policy concerns in creating a simplified yet complete rule of procedure in postconviction proceedings and the emphasis within the rule favoring evidentiary hearings unless conclusively demonstrated otherwise, we strongly urge trial courts to err on the side of granting evidentiary hearings in cases involving initial claims for ineffective assistance of counsel in capital cases.
[18] The new claims denied as successive include: trial counsel was ineffective due to a conflict of interest based on trial counsel's status as a special deputy sheriff (issue V); trial court's consideration of nonstatutory aggravators (issue XII); felony murder aggravator is an automatic aggravator (issue XIX); prosecutorial misconduct during penalty phase (issue XX); and jury instructions shifted burden of proof to defendant to argue for life sentence (issue XXI). (Gaskin listed his arguments using roman numerals.)
[19] The trial court found that the claims concerning nonstatutory aggravating factors (issue twelve), the felony murder aggravating factor (issue nineteen), prosecutorial misconduct (issue twenty), and the penalty phase jury instructions (issue twenty-one) could have been raised on direct appeal and therefore are precluded from being raised in collateral proceedings. We further note that during oral argument counsel for Gaskin conceded that these claims are procedurally barred. However, as noted in an earlier portion of this opinion, we disagree with the trial court's summary denial of Gaskin's conflict of interest claim, and therefore we do not treat the error as to this claim as harmless.