792 So.2d 1197 (2001)
David COOK, Appellant,
v.
STATE of Florida, Appellee.
No. SC94134.
Supreme Court of Florida.
June 28, 2001.
Rehearing Denied August 24, 2001.
*1198 Bret B. Strand, Assistant CCRC, and Rachel L. Day, Assistant CCRC, Office of the Capital Collateral Regional Counsel, Southern Region, Fort Lauderdale, FL, for Appellant.
Robert A. Butterworth, Attorney General, and Fariba N. Komeily and Lisa Rodriguez, Assistant Attorneys General, Miami, FL, for Appellee.
PER CURIAM.
David Cook appeals the trial court's summary denial of his postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. We find the trial court erred in denying relief without an evidentiary hearing and remand for an evidentiary hearing on Cook's claim that counsel was ineffective at the penalty phase for failing to investigate family history and possible mental health mitigators.

FACTUAL AND PROCEDURAL HISTORY
This Court has previously summarized the facts in this case as follows:
On August 15, 1984, Rolando and Onelia Betancourt, who worked as the midnight cleaning crew at a Burger King in South Miami, were found dead, both of single gunshot wounds to the chest. Following an anonymous tip, police brought Cook in for questioning and obtained a statement. According to this statement, Cook and two companions, Derek Harrison and Melvin Nairn, went to the Burger King to commit a robbery. They waited behind a dumpster in the back until Mr. Betancourt came out the back door and emptied the garbage. Cook then picked up Harrison's .38 caliber revolver, which was lying on the ground, followed Mr. Betancourt to the door, and pushed him inside. The door slammed shut behind them, preventing entry by Harrison and Nairn. Cook told the police that when he demanded money from the safe, Mr. Betancourt responded that he did not speak English and could not open the safe. When Cook continued to demand money, Mr. Betancourt hit him in the arm with a long metal rod and Cook shot him. Cook said he was on his way out when Mrs. Betancourt started screaming and grabbed him around his knees. He then shot her, ran out the back door, and fled with Harrison and Nairn. Cook told the police that he thought he had shot both of the victims in the arm. The physical evidence, as well as the trial testimony of Harrison and Nairn, were [sic] consistent *1199 with Cook's version of the shootings.
Cook v. State, 542 So.2d 964, 966 (Fla.1989)(footnote omitted).
In October of 1985, a jury found Cook guilty of two counts of first-degree murder, two counts of attempted robbery, burglary, and unlawful possession of a firearm while engaged in a criminal offense. Following the penalty phase of the trial, the jury recommended death for both murders. The trial court imposed life imprisonment for the murder of Mr. Betancourt and death for the murder of Mrs. Betancourt. The trial judge found four aggravating factors: previous conviction of a capital felony; murder committed for the purpose of avoiding lawful arrest or effecting escape from custody; murder committed during the commission of a burglary and two attempted robberies; and the murder was especially heinous, atrocious, and cruel (HAC). The only mitigator found to exist was Cook's lack of a history of prior criminal activity.
Cook raised five issues on direct appeal from his original judgments and sentences:
(1) whether the trial court erred in failing to excuse for cause two prospective jurors who stated they had difficulty understanding English; (2) whether the trial court erred in finding the aggravating circumstance of heinous, atrocious, and cruel; (3) whether the trial court erred in finding the aggravating circumstance of murder committed to avoid arrest; (4) whether the trial court erred in failing to find the two mental and emotional statutory mitigating circumstances [murder committed under the influence of extreme mental or emotional disturbance and impaired capacity to appreciate the criminality of his conduct or conform conduct to the law]; (5) whether the trial court's instructions during the sentencing phase, directing the jury to adhere to a "single ballot," discouraged juror deliberation and improperly compelled a premature recommendation of death.
Cook v. State, 542 So.2d at 966. This Court affirmed the judgments but reversed the death sentence after striking two of the aggravators, HAC and commission to avoid arrest. The case was remanded for further consideration by the trial judge.
On remand, the trial court reimposed the death sentence ore tenus at a hearing held on February 5, 1990. The written order imposing the new sentence was entered on March 30, 1990, during a hearing convened for the purpose of distributing copies of the resentencing order to the State and Cook's attorney. On direct appeal from resentencing, this Court found that (1) the trial court, in imposing the death sentence, did not consider the inapplicable aggravating factors of the victim's murder being heinous, atrocious, or cruel, or committed to eliminate a witness; (2) the defendant's death sentence was not disproportionate to the sentences of his accomplices; (3) the defendant's sentence was not disproportionate when compared to other defendants' sentences for similar murders; and (4) beyond a reasonable doubt the death sentence would have been imposed even if the sentencing order had contained findings that each of the nonstatutory mitigating circumstances had been proven. Cook v. State, 581 So.2d 141, 142-44 (Fla.1991).
On October 7, 1991, the United States Supreme Court denied Cook's petition for writ of certiorari. See Cook v. Florida, 502 U.S. 890, 112 S.Ct. 252, 116 L.Ed.2d 206 (1991). Cook thereafter filed a motion to vacate judgment of conviction and sentence on January 8, 1993, with a special request for leave to amend. He supplemented the motion on October 6, 1993, and *1200 filed a motion to compel production of public records from various agencies in Dade County on April 7, 1996.
The State filed its response to Cook's postconviction motion on May 9, 1996, addressing the substantive claims in Cook's motion, as well as the public records issue. In the response, the State argued it had already provided Cook with a copy of its own records in addition to those of the other Dade County agencies connected with it. The trial judge, in accordance with his oral pronouncement at the Huff[1] hearing, entered a written order summarily denying Cook's motion to vacate on December 4, 1996. After his motion for rehearing was denied, Cook filed this appeal on July 31, 1998.

ISSUES ON APPEAL
Cook raises the following twenty issues in this appeal: (1) whether he was entitled to a Huff hearing; (2) whether he was entitled to an evidentiary hearing on the following subissues: (a) the failure of the court to attach portions of the record to the order; (b) ineffective assistance of counsel at pretrial and the guilt phase; (c) ineffective assistance of counsel at the penalty phase; (d) ineffective assistance of counsel at resentencing; (e) ineffective assistance based on Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); (f) violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (g) the defendant's absence from critical stages of the proceedings; (3) whether the trial court showed a lack of impartiality (a) during trial and sentencing; (b) by failing to prepare a written order at resentencing; and (c) during postconviction proceedings; (4) whether Cook was improperly denied access to public records; (5) whether he was improperly denied access to trial counsel's files; (6) whether the prosecutor made improper comments that rendered the sentence unfair; (7) whether the appellate record was incomplete, rendering the appeal inadequate; (8) whether trial counsel rendered ineffective assistance by failing to raise the following claims: (a) that the jury was improperly instructed to reach a majority verdict; (b) that the burden of proof was shifted to the defense; (c) that the jury instructions violated Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); (d) that aggravating circumstances were improperly doubled; (e) that certain aggravating circumstances were found to exist automatically; and (f) that the statutory definitions of the aggravating circumstance were unconstitutionally vague; (9) whether the judge considered nonstatutory aggravating circumstances; (10) whether the trial court failed to find and weigh mitigating circumstances established on the record; (11) whether the pecuniary gain aggravating circumstance was improperly applied; (12) whether the defendant was improperly absent from critical stages of the proceedings; (13) whether the rule prohibiting juror interviews is unconstitutional; (14) whether juror misconduct occurred; (15) whether gruesome photographs were improperly admitted into evidence; (16) whether Cook should be considered "innocent" of the death penalty; (17) whether the cumulative effect of numerous errors entitles him to relief; (18) whether Cook's right to remain silent was violated; (19) whether Florida's death penalty is unconstitutional; and (20) whether this Court failed to apply the proper harmless error analysis during Cook's direct appeal.
Claims 3a-b, 6, 8b and e, 11,12, 14, 15, 18, 20 are all procedurally barred since they could have been raised on direct appeal *1201 of either Cook's original sentence or his resentencing (issue 20). See Ragsdale v. State, 720 So.2d 203 (Fla.1998); Johnson v. State, 593 So.2d 206 (Fla.1992). Claims 16, innocence of the death penalty, and 17, cumulative error, are also procedurally barred since the errors complained of are based on the original trial record and, as such, could have also been raised on direct appeal. See Lambrix v. State, 559 So.2d 1137 (Fla.1990).
Claims 8d, 9, and 10 are also procedurally barred since they were previously raised in Cook's direct appeal and found to be without merit. See Garcia v. State, 622 So.2d 1325 (Fla.1993) (issues 8d and 9); Medina v. State, 573 So.2d 293 (Fla.1990) (an argument previously raised, but couched in different terms in a later proceeding remains procedurally barred) (issue 10).
Claims 3c, 8a, 8c, 8f, and 19 are without merit. See Ragsdale (issue 3c) (judge's use of the terms "bogus" and "sham" in reference to defendant's public records claim did not show bias or warrant recusal since those terms were used in conjunction with language indicating a measured analysis of the issues); Harvey v. State, 656 So.2d 1253 (Fla.1995) (defense counsel does not have to object to proper instructions) (issue 8a); Combs v. State, 525 So.2d 853 (Fla.1988) (telling the jury its role is advisory is not error because such an instruction simply mirrors section 921.141, Florida Statutes, a valid statutory provision) (issue 8c); Suarez v. State, 481 So.2d 1201 (Fla.1985) (HAC instruction is valid); see also Provenzano v. Moore, 744 So.2d 413 (Fla.1999) (this Court has repeatedly rejected the argument that the death penalty is unconstitutional) (claim 16). Harvey (counsel does not have to object to proper jury instructions) (issue 8f).
Claim 7, which is in essence a claim of ineffective assistance of appellate counsel based on the insufficiency of the appellate record, should be raised in a habeas petition and is not cognizable in a 3.850 proceeding. Cook is not entitled to relief on claim 5 concerning trial counsel's failure to give Cook his records because it has been demonstrated that the records no longer exist.
We find Cook has sufficiently pled the matters concerning ineffective assistance of counsel at the penalty phase (claim 2) and this issue is not refuted by the record; therefore, remand for a proper evidentiary hearing is necessary. Although we agree the Huff hearing was inadequate (claim 1), we believe any harm suffered by Cook as a result is resolved by this Court's ruling which requires an evidentiary hearing to examine claims that would otherwise have been addressed in a properly conducted Huff hearing. In addition, we find a brief discussion of the public records issue (claim 4) is warranted since it directly affects the type of information that will be presented in an evidentiary hearing.

EVIDENTIARY HEARING/INEFFECTIVE ASSISTANCE OF COUNSEL
This Court has indicated on numerous occasions that a defendant is entitled to an evidentiary hearing on his initial postconviction motion unless (1) the motion, files and records in the case conclusively show that the defendant is not entitled to any relief, or (2) the motion or a particular claim is legally insufficient. See Maharaj v. State, 684 So.2d 726 (Fla.1996); Holland v. State, 503 So.2d 1250 (Fla. 1987). The defendant in a postconviction proceeding bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden. See Kennedy v. State, 547 So.2d 912 (Fla.1989). This Court, however, in determining *1202 whether or not an evidentiary hearing on a claim is warranted must accept the defendant's factual allegations to the extent they are not refuted by the record. See Peede v. State, 748 So.2d 253 (Fla.1999).
Where ineffective assistance of counsel is alleged, the defendant must establish a prima facie case that there was deficient performance by counsel and that there is a reasonable probability that the deficient performance affected the outcome of the proceeding. Because the record in this case does not conclusively refute Cook's allegations of ineffective assistance of counsel at the penalty phase, the trial court must conduct an evidentiary hearing to determine if counsel failed to investigate Cook's family history and possible mental health mitigators, and whether there is a reasonable possibility that such failure, if any, affected the outcome of the penalty proceeding. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
The record indicates that only one mitigating factor and two aggravating factors were found by the trial court.[2] On direct appeal Cook argued the trial court erred in failing to find the two statutory mitigators of extreme mental or emotional disturbance and diminished capacity to appreciate the criminality of his conduct. Cook now alleges counsel failed to properly investigate the mental mitigators and Cook's family and personal background. In addition, Cook argues counsel waited until the day before the penalty phase hearing to seek the assistance of a mental health expert.
While counsel presented the testimony of Dr. Haber,[3] a clinical psychiatrist, at the penalty phase hearing, Dr. Haber's evaluation of Cook was done the morning of the penalty phase hearing. Furthermore, Cook alleges the opinions rendered by the expert were based on this brief evaluation and Cook's self-reporting. Thus, Cook argues Dr. Haber, without being given family and other background information, was unable to support her testimony with other evidence.
The record also indicates that some general information concerning Cook's nonviolent past,[4] religion,[5] rehabilitation,[6] and others' evaluations of Cook as "slow" was presented at the penalty hearing. However, Cook complains that had counsel fully investigated his family and background, he would have been able to better cross-examine the witnesses that were presented. Counsel would have also discovered additional mitigating evidence including a long history of drug use, abuse as a child, racial threats and attacks upon moving to Florida, the death of a close sibling at an early *1203 age, a learning disability, and growing up in an atmosphere of chaos and instability.
Given the scarce mitigating evidence presented at the penalty phase, Cook is entitled to an evidentiary hearing on the issue of counsel's effectiveness at that stage of the proceeding. See Gaskin v. State, 737 So.2d 509 (Fla.1999); Rose v. State, 675 So.2d 567 (Fla.1996).
Although Cook raises other claims which he alleges entitle him to an evidentiary hearing, such as ineffective assistance of counsel at guilt and resentencing,[7] an Ake claim, and a Brady claim, we find no error in the trial court's summary disposition of these issues. More specifically Cook argues counsel was ineffective for laboring under a conflict of interest, conceding Cook's guilt, failing to pursue an intoxication defense, failing to secure a forensic expert, failing to object to the prosecutor's use of peremptory challenges to excuse black prospective jurors, failing to object to the written resentencing order, and failing to request a new penalty phase jury and the opportunity to present new evidence. The issue concerning a conflict of interest is not properly before this court since it was raised for the first time in a motion for rehearing from the denial of 3.850 relief. See Preston v. State, 528 So.2d 896 (Fla.1988). Additionally, Cook has not sufficiently pled information demonstrating that an actual conflict of interest adversely affected counsel's representation.
Cook's argument that trial counsel was ineffective because he conceded Cook's guilt is refuted by the record. Cook does not point to any instance where counsel conceded his guilt before the jury; rather, he has outlined a portion of the record where counsel summarizes what the State says it will prove. Cook has failed to sufficiently plead his claim that counsel should have based his defense on voluntary intoxication. He has not advanced any factual allegations to demonstrate intoxication at the time of the offense. Additionally, Cook has not demonstrated ineffectiveness in counsel's failure to engage the services of an independent expert on bullet trajectories. Cook admitted to shooting the victim while she was on her knees. He simply makes a conclusory statement that an expert's testimony would have exonerated him. As a final allegation of ineffectiveness of counsel at the guilt phase, Cook argues counsel should have challenged the State's use of peremptory challenges on two black jurors. The mere fact that the jurors are black does not mean they were not subject to challenge, and Cook has not alleged that the challenges were in fact racially motivated.
To the extent Cook argues he was entitled to the assistance of a psychological expert pursuant to Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), he had such assistance in the form of Dr. Haber, who testified at the penalty phase. Moreover, to the extent Cook is arguing the expert assistance was inadequate, this issue is subsumed under the claim of ineffective assistance of counsel at the penalty phase and relief is being granted on that claim.
Cook's claim that the State withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is premised on his allegation that the State did not disclose a *1204 letter received from codefendant Melvin Nairn offering additional assistance. However, it should be noted that Nairn was not called as a witness by the State; he was in fact called as a defense witness. Even assuming the letter was withheld, Cook does not allege how this fact demonstrates a reasonable probability of a different outcome at trial. See Strickler v. Greene, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

PUBLIC RECORDS
In the brief discussion of this issue that took place at the November 22, 1996 hearing, it appears that Cook's attorney made a public records request in 1992 and received documents from the state attorney's office in the same year. Cook's attorney then sent a letter thanking the state attorney's office for its compliance, but noting that several police reports regarding Cook and his co-defendants were still outstanding. However, during the Huff hearing, Cook's counsel made no mention of this or any other specific noncompliance; she only made a broad statement that Cook's motion to vacate remained incomplete because several public records had not been received. The prosecutor stated he had no indication that any requests were still outstanding. This Court has previously held that "any post-conviction movant dissatisfied with the response to any requested access must pursue the issue before the trial judge or that issue will be waived." Lopez v. Singletary, 634 So.2d 1054, 1057 (Fla.1993). Although Cook's original motion specifically listed the targeted agencies[8] from which public records were needed, Cook's counsel failed at the hearing to explicitly delineate the records she sought or the purpose the records would serve.
Defense counsel argued that the promulgation of Florida Rule of Criminal Procedure 3.852, which was effective on October 31, 1996, allowed the trial judge to exercise jurisdiction over all of the public records civil actions filed in other counties by that same defendant. Counsel contended she wished to file an amended motion to compel in compliance with this new rule. The trial court denied this request, noting counsel for Cook had been given adequate time to fully pursue this issue prior to this hearing and had, therefore, waived further pursuit of this issue under Lopez.
In Downs v. State, 740 So.2d 506 (Fla. 1999), this Court upheld the trial court's denial of the defendant's request for an evidentiary hearing on his public records claim because his motion did not contain specific factual allegations as to the type of records he needed. In Downs, the defendant argued that a law enforcement agency had not disclosed notes of witness interviews. However, the records custodian stated all records were in fact disclosed. When the defendant did not proffer any evidence to contradict that statement, this Court determined the summary denial was appropriate. See Downs, 740 So.2d at 510-11. In this case, the state attorney stated he had no indication that any public records requests were outstanding. Cook's counsel did not offer any evidence to refute this claim, nor did she explicitly explain which records were outstanding and the purpose for which they were sought. This lack of specificity warrants a denial of the relief requested under *1205 Downs. Therefore, we uphold the trial court's denial of this request.

CONCLUSION
Cook is entitled to an evidentiary hearing on his 3.850 motion because the records do not conclusively show that no relief is warranted on the issue of ineffective assistance of counsel at the penalty phase. The record shows the other claims are either procedurally barred, insufficiently pled, or meritless. Therefore, we affirm the denial of postconviction relief in all respects except ineffective assistance of counsel at penalty. On that issue we reverse and remand this case to the trial court to hold an evidentiary hearing.
It is so ordered.
SHAW, ANSTEAD, LEWIS, and QUINCE, JJ., concur.
WELLS, C.J., concurs with an opinion.
PARIENTE, J., concurs with an opinion, in which ANSTEAD, J., concurs.
HARDING, J., concurs in result only.
WELLS, C.J., concurring.
I concur in the decision in this case as to the denial of motions in all respects except the ineffective assistance of trial counsel in the penalty phase. In respect to the granting of the evidentiary hearing on this issue, I concur in result only.
I write because I am once again disturbed by the length of time this case has already been in postconvictionespecially taking into consideration that an evidentiary hearing has not even been held. I specifically request that this case be expedited as to the evidentiary hearing and any subsequent appeals.
PARIENTE, J., concurring.
I write separately for two reasons. First, I write to express my continued belief in the importance of trial judges erring on the side of granting an evidentiary hearing on an initial postconviction motion. Second, I write in response to Chief Justice Wells' concerns about the length of time this case has been in postconviction proceedings.
As to the fact that no evidentiary hearing has yet been held, the failure to conduct an evidentiary hearing unless the record conclusively shows that the defendant is not entitled to relief is not only contrary to the law, but also is in itself a cause of delay in the postconviction process. See Gaskin v. State, 737 So.2d 509, 519 (Fla. 1999) (Pariente, J., specially concurring) (explaining that failure to conduct an evidentiary hearing "causes delay and undermines our goal of providing a simplified, complete and efficacious remedy for postconviction claims"); Mordenti v. State, 711 So.2d 30, 33 (Fla.1998) (Wells, J., concurring) (noting that "[t]oo much judicial and counsel time and resources have been wasted in determining whether to hold an evidentiary hearing. This has added to the inordinate amount of time prisoners remain on death row"). We have urged trial judges to err on the side of granting an evidentiary hearing on the first postconviction motion on all factually-based claims such as ineffective assistance of counsel, Brady,[9] and newly discovered evidence. See Gaskin, 737 So.2d at 516; Ragsdale v. State, 720 So.2d 203, 206 (Fla. 1998). If the trial court in this case had granted an evidentiary hearing in 1996, the initial postconviction process would now likely be at an end. Instead, we face the specter of yet another delay as we return this case to the trial court.
*1206 As to the length of time this case has been in postconviction, our record in this case does not reflect the reasons for the delay in the trial court. Cook timely filed his postconviction motion in 1993 within the then-existing time periods and the trial court finally disposed of the motion in 1998. However, there appears to be no reason why the trial court took from 1996, when it entered the order denying Cook's postconviction motion, until 1998 to issue a one-line order denying the motion for rehearing.
It is less clear what caused the earlier three-year delay between Cook's filing of the initial postconviction motion in 1993 and the trial court's summary denial of the motion in 1996. Although our record does not reflect what occurred during that three-year period, we do know that during that time there was considerable difficulty with the procedure for public records production and continued problems with funding of postconviction counsel. There were more cases in the postconviction process than there were lawyers to handle them. During that time there was a substantial change in the organizational structure of CCR from one statewide office to three regional offices, which also contributed to delays during the transition period. We also know that from that three-year time period through to the present, this Court, with the cooperation of the executive and legislative branches, began a series of positive changes designed to enhance the reliability and efficiency of the postconviction review process.[10] Thus, although we can look to past experience to improve procedures for the present and future, I do not agree with Chief Justice Wells that the delay in this case mandates that this particular case should be expedited over all other postconviction cases.
ANSTEAD, J., concurs.
NOTES
[1] Huff v. State, 622 So.2d 982 (Fla.1993).
[2] On resentencing the trial court found in aggravation a previous conviction for a capital felony, commission of murder during a robbery, and murder committed for pecuniary gain. The latter two were merged so that two aggravating factors were found. The one mitigating factor was the absence of any prior criminal history.
[3] Defense counsel's direct examination of Dr. Haber consists of five pages in the appellate record, the State's cross-examination covers eight pages, and there is no redirect examination. The testimony at the penalty phase covers 92 pages, including the testimony of Cook, which takes up 29 pages.
[4] Several witnesses, including a neighbor, Cook's brother, and his brother-in-law, indicated Cook was not a violent person and tended to be a follower.
[5] Four of the nine other witnesses who were called to testify on Cook's behalf at the penalty proceeding talked about religion and the death penalty.
[6] Cook's sister, brother, and bother-in-law testified concerning his potential for rehabilitation and emotional immaturity.
[7] Cook's other claims of ineffective assistance of counsel at the penalty phase and at resentencing and his claim that he was absent at the proceeding where the trial court distributed the resentencing order have been rendered moot by our remand for an evidentiary hearing.
[8] Trial counsel for Cook requested documents from: Dade County Clerk of Court; Dade County Jail; Florida Department of Law Enforcement; Glades Correctional Institution inmate files; Metro Dade Police Department; Florida Parole Commission; Dade County Clerk of Court, Juvenile Department; and the Office of the State Attorney.
[9] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[10] We catalogued a series of positive changes between 1991 and the present in Allen v. Butterworth, 756 So.2d 52, 59 (Fla.2000). However, we also observed:

All of these measures indicate a concerted effort by the three branches of Florida government to ensure the timely and orderly administration of capital case proceedings. While this Court will continue such efforts, we are also mindful that our primary responsibility is to follow the law in each case and to ensure that the death penalty is fairly administered in accordance with the rule of law and both the United States and Florida Constitutions. "While all judicial proceedings require fair and deliberate consideration by a trial judge, this is particularly important in a capital case because, as we have said, death is different." Crump v. State, 654 So.2d 545, 547 (Fla.1995); accord Walker v. State, 707 So.2d 300, 319 (Fla.1997). The United States Supreme Court has also repeatedly emphasized that the Eighth Amendment requires a heightened degree of reliability in capital cases:
[T]he penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100 year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.
Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality opinion).
(Emphasis supplied.) See Arvelaez v. Butterworth, 738 So.2d 326, 327 (Fla.1999) (Anstead, J., specially concurring) (explaining that the Legislature in the 1998 and 1999 sessions "made significant strides in appropriating funds and implementing legislation intended to assist in alleviating the problems the CCRCs are experiencing").