979 So.2d 852 (2007)
Seburt Nelson CONNOR, Appellant,
v.
STATE of Florida, Appellee.
No. SC04-1283.
Supreme Court of Florida.
November 15, 2007.
As Clarified April 10, 2008.
*856 Israel J. Encinosa, Miami, FL, for Appellant.
Bill McCollum, Attorney General, Tallahassee, FL, and Margarita I. Cimadevilla, Assistant Attorney General, Miami, FL, for Appellee.
PER CURIAM.
Seburt Nelson Connor appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851, and he petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons that follow, we affirm the denial of postconviction relief and deny habeas relief.

FACTS AND PROCEDURAL HISTORY
After separating from her husband Lawrence in 1988, Margaret Goodine renewed a previous relationship with Seburt Connor, but she finally terminated the relationship in 1992. Connor then allegedly began to harass Margaret. He was believed to have committed a number of burglaries in which the burglar took bed sheets, towels, and linens from the Goodine home, and he was suspected of having called a neighbor of the family and threatened Margaret and her daughter Karen. One neighbor stated that she once witnessed Connor shoot at the home as he drove by. In September 1992, Lawrence Goodine rejoined Margaret and his daughters Karen and Jessica in the family home. In October, Connor was seen driving slowly through the neighborhood in a vehicle he had purchased that was apparently identical to Margaret's car. Goodine obtained a permanent injunction against Connor.
Karen Goodine arrived home from school on November 19, 1992, and called her mother to tell her that it appeared that someone had been inside the home. Neither Lawrence nor her younger sister Jessica could be located. Margaret told her daughter to call the police. When Margaret arrived home, she told the police that she believed Connor might be involved in the disappearance of her husband and daughter. Her husband's body was discovered in a wooded area near the Fort Lauderdale airport late the next afternoon; he had been dead for approximately twenty-four hours. When officer's arrived to report the discovery of the body, they noticed blood stains at the Goodine home. Soon thereafter, the police visited Connor, who gave consent for the officer's to search his vehicle and agreed to accompany the officer's to the station. The officer's noticed blood stains on the rear seat *857 of the car. Connor's wife consented to a search of the cottage behind the main home but the officer's observed nothing strange.
At the police station, Connor was advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and signed a standard waiver form. In response to questioning about blood on his socks and shoes, Connor showed the officer's a small cut on his leg. He had no response when asked how so much blood was produced by the relatively minor cut. He signed a consent form allowing the officer's to take his socks and shoes for testing. DNA test results later showed the blood to be that of Lawrence Goodine. Police obtained signed consent forms from both Connor and his wife permitting a search of his home and cottage. Jessica's body was found in the cottage wrapped in a comforter and wedged between the bed and wall.
The jury convicted Connor of two counts of first-degree murder, kidnapping, and burglary. On the jury's recommendations, the trial court imposed a life sentence for the murder of Lawrence Goodine and a sentence of death for the murder of Jessica. The trial judge found five aggravators for the death of Jessica: (1) previous capital felony; (2) murder committed while engaged in the commission of a kidnapping; (3) murder committed to avoid arrest; (4) the murder was heinous, atrocious, or cruel (HAC); and (5) the murder was cold, calculated, and premeditated (CCP). Four nonstatutory mitigators were found: (1) Connor is a good father, (2) Connor will die in prison if given a life sentence, (3) Connor was not a disciplinary problem while in prison, and (4) Connor suffered from a mental illness at the time of the murder. The first three mitigators were given little weight, but the fourth mitigator was given substantial weight.
On direct appeal, we struck the avoid arrest aggravator but affirmed the convictions and sentences. Connor v. State, 803 So.2d 598 (Fla.2001). In 2003, Connor filed a rule 3.851 postconviction motion raising fifteen grounds concerning the trial or performance of his defense counsel.[1] The trial court held an evidentiary hearing only on his claim of ineffective assistance of counsel during the penalty phase and ultimately denied relief on all grounds. In this appeal, Connor asserts error in the trial court's refusal to conduct an evidentiary hearing on numerous claims and in *858 the court's denial of relief. He also raises issues of ineffective assistance of appellate counsel that this Court deems a claim for habeas corpus relief.

RULE 3.851 APPEAL

Ineffective Assistance of Counsel
In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that trial counsel's performance was deficient and that the deficient performance prejudiced the defendant so as to deprive the defendant of a fair trial. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (affirming the Strickland two-prong analysis for claims of ineffective assistance of counsel). As to the first prong, the defendant must establish that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. 2052; see also Cherry v. State, 659 So.2d 1069, 1072 (Fla.1995). For the second prong, the reviewing court must determine whether there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687, 104 S.Ct. 2052.
Generally, this Court's standard of review following a denial of a postconviction claim where the trial court has conducted an evidentiary hearing accords deference to the trial court's factual findings. McLin v. State, 827 So.2d 948, 954 n. 4 (Fla.2002). "As long as the trial court's findings are supported by competent substantial evidence, `this Court will not substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court.'" Blanco v. State, 702 So.2d 1250, 1252 (Fla.1997) (quoting Demps v. State, 462 So.2d 1074, 1075 (Fla. 1984)). However, the circuit court's legal conclusions are reviewed de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).

Failure to Object to Prosecutor's Comment
Connor asserts that reversal of his conviction for a new trial is required because during jury selection the prosecuting attorney made a statement that implied that the defendant had a criminal record that the jurors would not hear about. Because it is undisputed that he had no prior criminal record, Connor argues that this statement was false and so prejudicial that it amounted to a denial of his due process rights. He asserts counsel was ineffective for failing to object and failing to move for a curative instruction. We affirm the denial of relief on this claim because deficient performance and resulting prejudice have not been demonstrated.
It is clear that the statement complained of by the defendant is only part of an explanation given in response to a juror's comment and has been taken out of context. During jury selection, the prosecutor asked the panel members about their prior experiences as jurors. One juror responded by saying that when she previously served as a juror she was troubled by learning, only after they had convicted the defendant of a lesser charge, that the *859 defendant had a long criminal record. The prosecutor immediately explained why jurors are not presented with such evidence during the guilt phase:
Because as soon as people hear that people have a criminal record, their presumption of innocence is not worth a whole lot because then you will start to assume they probably did it because they did it before, and the object is that every person who comes into the courtroom is presumed innocent and, therefore, their prior record is irrelevant to the determination of guilty, and if I was [defense counsel], my concern would be if she doesn't hear about the prior record of the defendant in this case because you won't.[2]
It is irrelevant to the determination, he may have none, you are just not going to know.
The transcript of the voir dire makes it apparent that the narrowly selected comment was at worst a poorly worded response to an issue wholly initiated by a prospective juror. The prosecutor expressly informed the venire that Connor might have no record. His statements immediately before and after the portion cropped by Connor further informed the jury that a prior record would in any event be irrelevant to the determination of guilt in the instant case. These facts are not analogous to the more egregious cases warranting relief in which prosecutors have intentionally or repeatedly suggested false circumstances to the jury. See Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967); Knight v. State, 316 So.2d 576 (Fla. 1st DCA 1975). We therefore affirm the trial court's denial of relief on this claim because Connor has not satisfied the two-prong test outlined in Strickland.

Failure to Strike the Jury Panel
During jury selection the judge asked several prospective jurors if they felt capable of giving the death penalty to someone like Fidel Castro. Connor blurted out, "Why Castro, he is a good man!" The following day two prospective jurors independently advised the judge that they were disturbed by Connor's statement. Connor now contends that either the court on its own initiative or his trial counsel should have made a motion to strike the entire jury panel. Because this contention is refuted by the record, we affirm the denial of 3.851 relief on this claim.
After Connor's statement, trial counsel immediately advised the judge that the comment might have been inflammatory enough to eliminate a prospective juror for cause. The court agreed and asked the entire jury panel whether they had heard a comment made by Connor. Four members stated they directly heard the comment, while three others admitted they heard of the comment through other members of the jury panel. Those members of the venire who were aware of Connor's comment were individually asked, by the court and counsel, whether they could be fair and impartial in light of the comment. Those members who indicated that they might be unable to render an impartial verdict based solely upon the evidence were excused for cause; thus, any motion for a mistrial on this basis would properly have been denied by the court. Because the entire panel was questioned and no juror was empanelled who might have been disturbed by the comment, Connor's argument is without merit and must be denied. Lusk v. State, 446 So.2d 1038, *860 1041 (Fla.1984) ("The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the law given to him by the court.").
The trial court took the proper action to preserve the defendant's rights. In addition, trial counsel made the proper objection and participated in the process of questioning the jury panel. Ineffective assistance of counsel under the Strickland standard has not been demonstrated.

Improper Comments by the Trial Court
The court repeatedly used the following to exemplify a case that does not deserve the death penalty:
Do you remember a case, probably right around the time you moved here, an older gentleman who was about 70 years old, his wife was extremely ill. He was convicted of killing his wife. Some people [call it] mercy killing.
Would you think that case, even if he was convicted of first degree murder, was that case appropriate for the death penalty?
Trial counsel did not object to the example. Connor contends that by using euthanasia as an example of a situation in which the death penalty might be inappropriate, the court was correspondingly instructing the jury that a life sentence was inappropriate in this case, since the facts of this case could not suggest a mercy killing. He further contends counsel was ineffective for failing to object to the trial court's use of this example.
An examination of the discourse between the court and the jury again shows that Connor removes this statement from its context. The record demonstrates that after reciting the euthanasia example, the trial court expressly stated, "Mitigating circumstances is [sic] anything about the case, the defendant, his life or any other circumstances that might, in your mind, mitigate or lessen the penalty to tell you that the death penalty is not appropriate and that instead, that in this case, life in prison without the possibility of parole for 25 years is appropriate." In addition, the jury was expressly instructed that any aspect of the defendant's character or record and any circumstance of the offense could be considered a mitigating circumstance by the jury.
Because Connor makes a conclusory allegation of deficiency that is refuted by the record, we affirm the trial court's denial of relief. Ineffective assistance of counsel has not been demonstrated.

Failure to Object to a Comment on Silence
Connor lists five instances during the direct examinations of two police detectives in which he alleges that a comment was improperly made on his Fifth Amendment right to remain silent. He alleges trial counsel was ineffective for failing to object to the comments because any comment which is fairly susceptible to interpretation as a comment on a defendant's right to remain silent will be deemed as such and may constitute an impermissible violation of constitutional rights. See State v. Kinchen, 490 So.2d 21 (Fla.1985).
Connor freely and knowingly waived his Miranda rights before agreeing to speak with the detectives. He does not contest the validity of the waiver. Connor answered a number of questions but failed to respond to other more specific questions. Under these circumstances, the comments made by these detectives are not susceptible to interpretation as comments on silence. In Hutchinson v. State, 882 So.2d 943 (Fla.2004), this Court reiterated, "The prohibition against commenting on a defendant's silence does not apply *861 when the defendant does not invoke his Fifth Amendment right." Id. at 955. We agree with the trial court's finding that Connor did not invoke his right to remain silent. Connor's allegation of deficiency on this ground is without merit. Ineffective assistance of counsel has not been demonstrated. Therefore, we affirm the denial of relief on this claim.

Conflict of Interest
Attorney Louis Jepeway was initially appointed to serve as Connor's counsel. Jepeway then selected Eugene Zenobi as his co-counsel. Connor filed a motion seeking to remove both attorneys due to alleged conflicts of interest. Connor also filed a bar complaint against Jepeway that was later dismissed. Connor makes two arguments alleging that the trial court erred in not discharging his counsel. He contends that the court failed to protect his rights because conflict of interest attached at the moment he filed a bar complaint against Jepeway; thus, the attorney should not have been permitted to represent him at the competency hearing that was held prior to discharge. He also alleges that the trial court erred because it failed to inquire into the allegations of a conflict of interest with Zenobi, who shared office space with Jepeway and succeeded him as trial counsel.
After the competency hearing in which Jepeway represented the defendant, the trial court found that although Connor's bar complaint against Jepeway was dismissed as meritless, it was a factor creating a conflict of interest between the defendant and attorney. Jepeway was removed as counsel and Zenobi became first chair counsel. Connor seems to argue that he is entitled to have his conviction automatically reversed because Jepeway acted as his counsel in the competency hearing. In order to be entitled to relief based on ineffective assistance of counsel because of a conflict of interest, Connor must demonstrate that counsel labored under an actual conflict of interest that adversely affected counsel's performance. See Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); Wright v. State, 857 So.2d 861 (Fla.2003).
While Connor has alleged a conflict of interest based in part, on the fact that he filed a Florida Bar grievance against Jepeway, Connor has neither alleged nor demonstrated how this alleged conflict impacted counsel's performance at the competency hearing. The results of the hearing in question and the other competency hearings in this case show that Connor was found competent by the court based upon the testimony of mental health experts. Connor does not argue here that he should have been found incompetent, and he fails to allege that the result of the proceeding was adverse as a result of his counsel's alleged conflict of interest. See Wright v. State, 857 So.2d at 871-72 (holding that in claims of ineffective assistance based on a conflict of interest the defendant must show that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance); see also Mickens v. Taylor, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) (explaining the "actual conflict of interest" language from Cuyler v. Sullivan).
Connor also contends that a conflict of interest was imputed to his next attorney because of an ongoing business arrangement the attorney had with Jepeway. The arrangement between Zenobi and Jepeway consisted of shared office space, office expenses, and secretarial services. The Florida Rules of Professional Conduct provide: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any 1 of *862 them practicing alone would be prohibited from doing so." R. Regulating Fla. Bar 4-1.10(a). The comment to the Preamble of the Florida Rules of Professional Conduct also notes: "Whether 2 or more lawyers constitute a firm . . . can depend on the specific facts. For example, 2 practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm." Without some further significant demonstration approaching the level of a partnership or professional association, shared office space and secretarial services will not permit imputation of conflict. Connor fails to present any evidence upon which the trial court could have presumed conflict. Moreover, the record reveals that, upon the discharge of Jepeway, the trial court expressly asked Connor whether he wished Zenobi to continue as his counsel. Connor unequivocally answered in the affirmative. Connor waived any potential conflict of interest claim against Zenobi. Therefore, we affirm the trial court's denial of relief on this claim.

Investigation and Preparation of Guilt Phase
Connor cites several additional circumstances that occurred in support of his claim that trial counsel failed to prepare for trial and was otherwise constitutionally deficient. His allegations suggest that trial counsel should have aggressively pursued a theory that Connor was framed for the murders of Lawrence and Jessica Goodine, possibly by Mrs. Goodine. In each sub-claim of this issue Connor fails to demonstrate that the alleged error constitutes constitutionally deficient performance. Additionally, he makes only conclusory allegations that the alleged error would have changed the outcome of the trial. See Kennedy v. State, 547 So.2d 912, 913 (Fla. 1989) (holding that mere conclusory allegations are insufficient to support a claim of ineffective assistance).
Connor first asserts that had trial counsel presented the initial police statement of Fasha Thomas to the jury, the outcome of the trial would have been different. Fasha, the young playmate and next-door neighbor of Jessica Goodine, was the last person to see Jessica alive. According to Connor, Fasha initially gave a statement in which she stated that Jessica was driven away by her father Lawrence Goodine in a black Cadillac at 5:30 p.m. Connor contends that the child's statement demonstrates that Lawrence Goodine was not killed inside the home as suggested by the State. Connor stretches to reach this conclusion because in the statement he relies on Fasha saying she thought the car was driven by Jessica's father. While she did say a specific time, at trial she could not say what time it was when the events occurred.[3] As in most of these claims, Connor completely fails to argue how the failure to use the original statement is an error that falls below prevailing professional standards. Moreover, he fails to show how the alleged error would have changed the outcome of the trial or otherwise diminished confidence in the outcome. The two-pronged test from Strickland has not been satisfied. We therefore affirm the denial of 3.851 relief on this claim.
Connor next argues that trial counsel erred in not highlighting the fact that the police failed to initially notice certain clues, including several bloodstains in the Goodine home and the body of Jessica *863 in Connor's cottage. However, the record shows that trial counsel mentioned during both opening and closing that the police could not have overlooked the girls body during their initial search of the cottage. Although counsel did not dwell on the fact that the bloodstains were not initially discovered at the victims home, the matter of this oversight was fully discussed during the States examination of the witness. Connor does not point to anything specific that defense counsel could have done with this issue. Relief on ineffective assistance of counsel claims must be based on more than speculation and conjecture.
Connor also contends that trial counsel failed to present testimony that would contradict the suggestion that he had made an anonymous threatening phone call to the Goodines' neighbors. During trial, Alice McLaughlin testified that she received certain anonymous phone calls. Referring to her as "Miss Alice" on each occasion, the caller asked her to give a message to Margaret Goodine that he was going to kill her and her daughter Karen. Connor now argues defense counsel should have called as witnesses Wendell McLaughlin, Alice McLaughlin's husband, and Officer Taylor. Even if we accept as true Connors assertion that Wendell McLaughlin knew Connor and could identify his voice, Connor has failed to make a connection between this fact and telephone calls that were made to another person. In addition, Alice McLaughlin acknowledged that she did not know who made the calls to her. The same lack of connection exists with the potential testimony of Officer Taylor. Connor alleges that Taylor could have testified that in one of the telephone calls there was a possible threat to the defendant requiring him to appear at a notorious club. There has been no showing of how this testimony would have impeached the testimony of Alice McLaughlin or how the testimony was otherwise relevant.[4]
Connor argues that trial counsel failed to request a court order to run through the criminal database one latent fingerprint found in the Goodine home and five prints found in his Cadillac. Although no attempt was made by the defense to have these fingerprints examined, defense did in fact bring out in cross-examination the fact that the police did not do a check of the fingerprints in its database. More importantly, Connor has failed to allege or demonstrate any specific prejudice from the failure to examine the fingerprints. No information concerning the fingerprints was presented at the evidentiary hearing. Further, in this Court, Connor merely alleges that "the unidentified fingerprints should have been made a focal point of Mr. Connors defense."
Connor next asks a number of rhetorical questions regarding the whereabouts of Margaret Goodine on the day of the murders, about a handgun that was reported missing, and about the probating of the estates of the two murder victims. He also asserts that trial counsel rendered deficient performance in failing to attack Margaret Goodine concerning her whereabouts after her daughter called her and on the fact that she commenced probate proceedings on the estates of her loved ones. He contends she had a pecuniary motive to murder her husband and one of her two daughters. These claims are legally insufficient to establish a claim of *864 ineffective assistance. There was nothing beyond these bare assertions presented to the court that would demonstrate both deficient performance and resulting prejudice. Again, ineffective assistance has not been demonstrated.
Detective Tymes testified that she interrogated Connor and eventually advised him that Jessica Goodine's body had been found in his cottage. Connor responded, "Well, why didn't they take her up to the airport?" This response referred to the location of Lawrence Goodine's body, a significant fact of which Connor had not been made aware. Connor alleges that counsels failure to impeach the detectives testimony with allegedly inconsistent deposition statements indicates a lack of preparation for trial. On the contrary, the record generally reveals significant preparation and highly professional representation by Connors counsel. Connor alleges harm by stating that Detective Tymes would have been discredited if she had been properly impeached with her deposition testimony, which stated that Connor did not admit to either murder. Connor fails to demonstrate that the deposition statement and the officer's trial testimony are inconsistent. Additionally, even assuming the two are inconsistent, he has not demonstrated a reasonable possibility that the outcome of the proceeding would have been different had defense counsel used the deposition at trial. In other words, our confidence in the proceeding has not been undermined even if the officer's testimony could have been impeached in this manner.
Lastly, Connor asserts that trial counsel's questioning of him portrayed him as less than competent and was inconsistent with his trial strategy. Trial counsel testified during postconviction that he has always maintained that Connor was incompetent and considered it as part of his trial strategy for both the guilt and penalty phases. This was a reasonable strategy under the evidence and circumstances presented. Furthermore, Connor's alleged incompetence is not inconsistent with a theory that Connor was not guilty of the crime. Connor testified regarding his whereabouts during the time of the murder and testified concerning the planting of evidence against him. Nothing has been presented by Connor to demonstrate that counsel's performance fell below the standard for effective assistance, and nothing has been presented to demonstrate that he was prejudiced by defense counsel's examination of him at trial.
Connor fails to argue how trial counsel's performance fell below prevailing professional standards on any of these guilt phase claims. Moreover, evidence indicative of Connor's guilt included his recent purchase of a car identical to that of Mrs. Goodine, which was the type of car in which Jessica was last seen, the discovery of Jessica Goodine's body in the cottage behind his home, unique knowledge of the location of Lawrence Goodine's body, and blood evidence found in his car and on the clothing that he wore during the interrogation which matched Lawrence Goodine. Connor utterly fails to demonstrate deficient performance and resulting prejudice; therefore, we affirm the trial court's denial of postconviction relief based on Connor's claim that trial counsel was ineffective in the guilt phase of the trial.

Ineffective Assistance During Penalty Phase
Connor also argues ineffective assistance of counsel during the penalty phase, asserting that trial counsel was ill-prepared to examine Dr. Eisenstein regarding Connor's criminal behavior, failed to present Dr. Jacobson as an expert witness, failed to present Kricenze Connor as a *865 background witness, and otherwise failed to present evidence of childhood abuse suffered by Connor. The record supports a finding of competent and professional performance.
Strickland requires that the defendant show that counsel's performance was deficient and that the deficiency resulted in prejudice that deprived the defendant of a fair trial or penalty proceeding. See 466 U.S. at 687, 104 S.Ct. 2052. Connor first alleges defense counsel was not prepared because he was caught off guard when the State questioned the mental health experts about the background materials they reviewed in forming their opinions, specifically when they were asked about Connor's prior criminal behavior. This behavior involved multiple workplace incidents, including a bomb threat over a parking place dispute and an incident with a machete. Connor also contends that trial counsel should have used the information offensively to show that he was not functioning in a normal manner, and to show as mitigation that Connor did not have a significant criminal history.[5]
Connor is really arguing that the penalty phase of the trial could have been conducted differently. Although penalty phases may in fact be handled in different ways, Connor has failed to demonstrate any serious deficiencies in the manner in which this penalty phase was handled. Defense counsel attempted to exclude use of these workplace incidents, but when they were admitted he used the information by arguing in closing that these incidents were only accusations of criminal wrongdoing and that Connor had never been convicted as a result of any of these accusations.
Connor also contends that trial counsel should have presented the testimony of Dr. Jacobson as mitigation. Connor acknowledges that Dr. Jacobson found him competent but asserts that the doctor could have testified that Connor had always been paranoid, that the condition has slowly worsened due to vascular disease and hypertension, and that there was evidence of organic brain damage. This evidence is cumulative to testimony elicited from Dr. Eisenstein and Dr. Mosman during the penalty phase. Furthermore, the evidence was presented to the trial court, and the trial judge expressly noted these symptoms and considered Dr. Jacobson's report and other evidence that was presented in the competency hearings in the original sentencing order. Counsel is not ineffective for failing to present cumulative evidence. See Gudinas v. State, 816 So.2d 1095, 1106 (Fla.2002).
Connor argues that Kricenze Connor, a distant cousin, knew him as a child and would have been able to testify regarding his impoverished and abusive upbringing, lack of a father figure, and lack of schooling. He also contends this testimony could have been buttressed by the testimony of family members to show that his abuse as a child resulted in him abusing his own children. Counsel did not personally visit Honduras, but he testified that he had an investigator research the defendant's childhood in Honduras as well as his more current business dealing there involving a hotel. Trial counsel also testified that he spoke with any potential local witness that was available. More importantly, counsel indicated that he chose to focus on the mental health testimony and *866 the defendant's positive relationship with his family.
The evidence presented at the evidentiary hearing does not demonstrate that defense counsel's strategy concerning the penalty phase was in error. Although Kricenze Connor testified about the defendant's background, including some abuse, Dr. Mosman also testified on the subject. He indicated that he could not take the defendant's childhood abuse out of context and use it to explain these crimes. He further explained that the defendant had a relatively normal life with a family and a stable work history. Despite the fact that there was evidence presented at the evidentiary hearing that Connor severely punished his own children, this was not the picture that these witnesses presented at the penalty phase. His three children and wife testified that he was a loving and supportive father as well as a good provider. The children said that Connor was a good influence on them growing up and that he continued to be a good influence despite the fact that he was incarcerated.
Again, Connor is essentially arguing that a different strategy should have been used at the penalty phase. However, he has failed to demonstrate that the strategy he now espouses was a better one or that the strategy presented deprived him of a fair penalty proceeding. This case involved the vicious strangling of a ten-year-old girl. Trial counsel specifically considered and rejected the presentation of debatable evidence suggesting that Connor committed the crime because he had been physically abused decades earlier. Counsel undertook a deliberate and reasonable strategy to present positive family life mitigating evidence and mental health mitigating evidence, instead of a strategy that would have included abuse of the defendant and abuse by the defendant. Based on the circumstances of this case, we cannot say that our confidence in this case is undermined because counsel chose not to present evidence that was inconsistent with the evidence that was presented. See, e.g., Rutherford v. State, 727 So.2d 216, 223 (Fla.1998) (finding no error in defense counsel's decision to focus on mitigation evidence that humanized the defendant). Accordingly, the trial court properly denied relief on this claim.

Confrontation under Crawford v. Washington

Connor argues that the admission of statements made by the Goodines' neighbor deprived him of his right to confrontation under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), which was decided after the filing of the postconviction motion. These statements, which were admitted over the objection of trial counsel, regarded an alleged break-in by Connor of the Goodine home, the existence of an injunction against him, and a telephone call received by the neighbor from an unidentified caller threatening the life of Mrs. Goodine and her daughter Karen. He contends that the statements were testimonial and inadmissible under Crawford.
This confrontation issue was not raised at the trial level and was not raised in the 3.851 motion. Because the issue may not be heard for the first time on appeal of a postconviction motion, we deny relief on this issue. See, e.g., Doyle v. State, 526 So.2d 909, 911 (Fla.1988). Moreover, this Court held in Chandler v. Crosby, 916 So.2d 728 (Fla.2005), that Crawford does not apply retroactively. Connor's convictions and sentences were final prior to the court's Crawford decision.

Ex Parte Conduct by the Trial Court
Connor claims the trial court violated his right to be present at all stages of his trial and in support of this claim lists several instances from the record *867 in which "there is no notation that Appellant was present" at the proceeding. He also argues the trial court improperly engaged in an ex parte communication with one of the jurors. As to the first argument, this claim is procedurally barred because it could have been and should have been raised on direct appeal. See Cook v. State, 792 So.2d 1197, 1200 (Fla.2001); Hardwick v. Dugger, 648 So.2d 100, 105 (Fla.1994). In addition, this claim fails on its merits because the absence of a notation in the record is not sufficient evidence to demonstrate that the defendant was absent at any particular point. This is especially true where, as here, there was a standing stipulation on the record that the defendant was present at all times.
Connor also cites an instance where, after being advised that a juror had taken ill, the judge spoke with the juror, allegedly outside of the presence of counsel,[6] decided to call fire rescue, excused the juror, and substituted one of the alternate jurors. Defense counsel voiced an objection on the record. Thus, the issue could have been and should have been raised on direct appeal, and is not cognizable in this postconviction proceeding. Therefore, we affirm the trial court's denial of relief on this claim.

Mental Retardation Claim
Connor makes several arguments under this mental retardation claim.[7] He first asserts that he suffers from mental and psychological disorders, such as organic brain damage, frontal lobe damage, micrographia, paranoid schizophrenia, and stuttering, thus making it unconstitutional to execute him. Secondly, he makes an alternative argument that this claim should be remanded to the trial court for a full determination of his mental state. Lastly, Connor argues that Florida's statute concerning mental retardation, section 921.137, Florida Statutes (2005), is unconstitutional because it violates the prohibition against cruel and unusual punishment. To the extent that Connor is arguing that he cannot be executed because of mental conditions that are not insanity or mental retardation, the issue has been resolved adversely to his position. See, e.g., Diaz v. State, 945 So.2d 1136, 1151 (Fla.2006) (indicating that neither this Court nor the United States Supreme Court has recognized mental illness as a per se bar to execution). To the extent Connor is claiming that he is mentally retarded, we deny this claim without prejudice to seeking any remedy he may still have available under Florida Rule of Criminal Procedure 3.203.[8] And to the extent Connor argues that the date in section 921.137 precludes some defendants from making a mental retardation claim, such an argument does not take into account the provisions of rule 3.203, which has effectively allowed all death row *868 inmates with valid mental retardation claims to file a successive 3.851 motion pursuant to the rule. See Phillips v. State, 894 So.2d 28 (Fla.2004).

Summary Denial of Postconviction Claims
Connor asserts that the postconviction court erred by denying most of his postconviction claims without holding an evidentiary hearing. However, beyond a reference to the issues that have already been addressed, he does not point to any specific issue that would have required an evidentiary hearing. Postconviction claims may be summarily denied when they are legally insufficient, should have been brought on direct appeal, or are positively refuted by the record. See, e.g., Roberts v. State, 568 So.2d 1255 (Fla.1990). All of the claims addressed in this Court fall into one of these categories; therefore, the trial court did not err in summarily denying the claims.[9] Accordingly, Connor is not entitled to relief on this claim.

Cumulative Error
As his last 3.851 issue Connor argues that cumulatively the errors alleged deprived him of the right to a fair trial. Because each of his claims is without merit or procedurally barred, the claim of cumulative error also fails. Downs v. State, 740 So.2d 506, 509 n. 5 (Fla. 1999). The trial court did not err in denying Connor relief on this claim.

PETITION FOR WRIT OF HABEAS CORPUS[10]

Ring and Apprendi Claim
Connor asserts that the imposition of the sentence of death in his case violates the decisions of the United States Supreme Court in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Connor's case became final on direct appeal in 2001. This Court has held that Ring and Apprendi do not apply retroactively to defendants whose convictions were final when the decisions were rendered. See Johnson v. State, 904 So.2d 400 (Fla.2005); Hughes v. State, 901 So.2d 837 (Fla.2005).

Ineffective Assistance of Appellate Counsel
Connor claims that he is entitled to habeas relief because his appellate counsel was ineffective in failing to raise a number of issues during his direct appeal. He asserts, abstractly and with an overly broad brush, that appellate counsel failed to raise each of the errors alleged in this postconviction motion during his appeal.[11] Claims of ineffective assistance of appellate counsel are properly raised in a petition for writ of habeas corpus addressed to the appellate court that heard the direct appeal. See Rutherford v. Moore, 774 *869 So.2d 637 (Fla.2000). The standard for proving ineffective assistance of appellate counsel follows the same two-prong analysis established for an ineffective assistance of trial counsel claim under Strickland. See Wilson v. Wainwright, 474 So.2d 1162 (Fla.1985). Thus, when evaluating a claim for ineffective assistance of appellate counsel, this Court must determine: (1) whether the alleged omission is of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance, and (2) whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result. See Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986); accord Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000); Thompson v. State, 759 So.2d 650, 660 (Fla.2000).
In raising a claim of ineffective assistance of appellate counsel, "[t]he defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So.2d at 1069; see also Knight v. State, 394 So.2d 997, 1001 (Fla.1981). Furthermore, a petitioner cannot prevail on a claim of ineffective assistance of appellate counsel "[i]f a legal issue `would in all probability have been found to be without merit' had counsel raised the issue on direct appeal." Rutherford, 774 So.2d at 643 (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994)). Nor can appellate counsel be deemed ineffective for failing to prevail on an issue raised and rejected on direct appeal. See Spencer v. State, 842 So.2d 52 (Fla.2003).

Improper Prosecutorial Comment during Jury Selection
Connor argues that appellate counsel was ineffective for not arguing before this Court that during jury selection of his trial, the prosecutor made an improper comment that referred to his prior record. However, as we said in Connor's 3.851 claim alleging trial counsel's failure to object and failure to move for a jury instruction, Connor takes the State's comment out of its proper context. One of the prospective jurors made a comment during voir dire that she was concerned that after finding a defendant in a prior case guilty of a lesser included offense, the jury learned that the defendant had a lengthy prior record. The comment Connor complains of was made by the prosecutor in the context of his explanation of why jurors generally are not told of the defendant's prior record, i.e., so the defendant will be judged on the facts presented and not based on prior conduct. As a result, Connor failed to demonstrate deficiency and prejudice by trial counsel's failure to object to the prosecutor's comments. Therefore, had appellate counsel raised this issue on appeal, the issue would in all probability have been found without merit. See Rutherford, 774 So.2d at 643. Accordingly, Connor is not entitled to habeas relief on this claim.

Confrontation under Crawford v. Washington

Connor argues that appellate counsel was ineffective for failing to argue on appeal that his right to confrontation articulated in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), was violated during his trial. No objection was made to the evidence at trial on this basis. Therefore, appellate counsel cannot be deemed ineffective for failing to raise a claim that has not been preserved for appeal and that has not been shown to be fundamental error. See Valle v. Moore, 837 So.2d 905 (Fla.2002). Accordingly, *870 Connor is not entitled to habeas relief on this claim.

Failure to Strike the Entire Jury Panel
Connor argues that appellate counsel was ineffective for not arguing before this Court that the trial court erred by not striking the entire jury panel based on a comment made during the jury selection process by Connor concerning Fidel Castro. As we said in Connor's postconviction claim alleging trial court error and trial counsel error, Connor's claim is without merit because the entire panel was questioned and no juror was empanelled who might have been disturbed by the comment. Therefore, had appellate counsel raised this issue on appeal, the issue would in all probability have been found without merit. See Rutherford. Connor is not entitled to habeas relief on this claim.

Improper Comments by the Trial Court During Jury Selection
Connor also argues that appellate counsel was ineffective for not arguing that the trial court made improper comments during jury selection concerning a mercy killing as a possible example of a case with mitigation. Again, there was no objection made at trial, and Connor takes the statement out of context and fails to discuss the other statements made on the issue. Connor makes a conclusory allegation of deficiency that is refuted by the record. Had appellate counsel raised this issue on appeal, the issue would in all probability have been found without merit. Furthermore, Connor is also not entitled to habeas relief because trial counsel did not object to the comments, and thus did not preserve the claim. This Court has consistently held that appellate counsel cannot be deemed ineffective for failing to raise an issue that was not properly preserved at trial and does not present a fundamental error. See Valle v. Moore. Habeas relief is accordingly denied on this claim.

Comment on Right to Remain Silent
Connor next claims appellate counsel was ineffective for failing to raise as an issue on appeal that police officer's commented on his right to remain silent during their testimonies at trial. As we indicated in his claim that trial counsel was ineffective for failing to object to the same comments, the defendant did not exercise his right to remain silent in this case. The defendant freely and voluntarily waived his right to remain silent and answered multiple questions propounded by the officer's. Under these circumstances, a claim that the officer's commented on his right to remain silent would have failed on appeal. See Hutchinson v. State, 882 So.2d 943 (Fla.2004). Appellate counsel cannot be deemed ineffective for failing to raise a meritless issue.

Improper Conduct by Trial Court
Lastly, claims are being made that appellate counsel was ineffective for not arguing on appeal that the defendant was absent on several occasions during the trial and that the trial court had an ex parte communication with a sick juror. Connor makes the allegations of absence from the courtroom based on the fact that there is no notation in the transcript that indicates his presence. However, he fails to acknowledge that there is a stipulation in the record that indicates the defendant was present at all times. Additionally, while defense counsel objected to the trial judge's excusal of a juror who became ill, there is no indication that the attorneys were not present during the questioning of the juror. On these facts, ineffective assistance of counsel has not been demonstrated.

CONCLUSION
For the reasons stated above, we affirm the trial court's denial of 3.851 relief, and *871 we deny the petition for a writ of habeas corpus.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Connor raised the following postconviction claims: (1) appellate counsel failed to raise the issue that there were only five African-Americans on the jury; (2) trial counsel failed to object to the prosecutor's suggestion that Connor had a criminal history, and appellate counsel failed to raise the error; (3) trial counsel failed to move to strike the panel after the jury heard a highly inflammatory remark about Fidel Castro, and appellate counsel failed to raise the error; (4) trial counsel failed to object when the prosecutor told the jury that they could vote for death or life in prison, and appellate counsel failed to raise the error; (5) the trial court improperly used an example involving a mercy killing during voir dire, appellate counsel failed to raise the error; (6) the prosecutor made highly inflammatory and false remarks concerning the victim, and appellate counsel failed to raise the issue; (7) Connor's right to be present at all stages of the trial was violated, and appellate counsel failed to raise the issue; (8) Connor's Confrontation Clause rights were violated, and appellate counsel failed to raise the issue; (9) Connor's right to remain silent was violated; (10) one crime scene fingerprint was never identified; (11) there were per se conflicts of interest, and appellate counsel failed to raise the error; (12) ineffective assistance of counsel during the guilt phase; (13) ineffective assistance of counsel during the penalty phase; (14) Florida's sentencing scheme is in violation of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); and (15) Connor's death sentence violates the Florida and U.S. Constitutions because he is mentally retarded.
[2] This underlined sentence is the portion of the statement that the defendant points to as error.
[3] Connor does not allege or demonstrate that the original statement would have been admissible as a prior inconsistent statement. See State v. Hoggins, 718 So.2d 761, 770-71 (Fla. 1998) (holding that in order to be inconsistent the prior statement must either contradict or materially differ from the testimony at trial).
[4] Connor seems to put in this issue a number of telephone calls to different people over a lengthy period of time without making a real effort to connect these calls to any issue in the case. He ends by merely saying that this other information would have demonstrated that he was framed.
[5] In this claim, Connor contends that trial counsel was deficient in not presenting evidence that he was irrational and incapable of functioning normally. In his claim that counsel was ineffective while conducting his direct examination, he faults counsel for asking questions that made him appear irrational or incompetent.
[6] After the court was informed that a juror was ill, the court recessed the proceedings. The next information on the record is the trial court explaining what occurred and indicating that she was excusing the ill juror. At this point the defense attorney objected. The record does not indicate whether the attorneys were or were not with the judge at the time she spoke to the juror.
[7] Connor does not, in the briefs filed in this Court, clearly and unequivocally assert that he meets the criteria established for mental retardation.
[8] Connor made a claim of mental retardation in his 3.851 motion. The trial court summarily denied the claim finding that his IQ scores, between 81 and 84, indicate he is not retarded. See Zack v. State, 911 So.2d 1190, 1201 (Fla.2005); Cherry v. State, 781 So.2d 1040 (Fla.2000). It is unclear from this record if the information relied on by the trial court was provided in the context of a competency determination, during the presentation of mental mitigation, or in the context of a claim of mental retardation.
[9] An evidentiary hearing was conducted on the claim that trial counsel was ineffective during the penalty phase.
[10] Although counsel did not file a separate petition for writ of habeas corpus, he raised a number of ineffective assistance of appellate counsel claims in the 3.851 appeal brief. While this is not the procedure contemplated, we nonetheless treat these issues as if they had been separately raised in a petition in the interest of judicial economy and efficiency.
[11] Connor presented six claims on direct appeal in October 1999: (1) the trial court erred in denying his motion to suppress the physical evidence; (2) the trial court erred in finding the avoid arrest aggravator; (3) the trial court erred in finding CCP; (4) the trial court erred in rejecting the statutory mitigators of extreme emotional disturbance and impaired capacity to appreciate the criminality of his conduct; (5) the trial court erred in rejecting the statutory mitigator of no significant criminal history; and (6) the sentence of death is disproportionate.